Cheryl A. Williams (Cal. Bar No. 193532)
Kevin M. Cochrane (Cal. Bar No. 255266)
caw@williamscochrane.com
kmc@williamscochrane.com
WILLIAMS & COCHRANE, LLP
28581 Old Town Front Street
Temecula, CA 92590
Telephone: (619) 793-4809

Attorneys for Plaintiff
PAUMA BAND OF MISSION INDIANS

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PAUMA BAND OF LUISENO MISSION INDIANS OF THE PAUMA & YUIMA RESERVATION**, a/k/a PAUMA BAND OF MISSION INDIANS, a federally-recognized Indian Tribe,<br><br>Plaintiff,<br><br>vs.<br><br>**UNITE HERE INTERNATIONAL UNION**; **STATE OF CALIFORNIA**; and **EDMUND G. BROWN, JR.**, as Governor of the State of California;<br><br>Defendants. | Case No.: 16-CV-02660 BAS AGS<br><br>**PAUMA BAND OF MISSION INDIANS' POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Date:     February 27, 2017<br>Time:    TBD<br>Dept:     4B<br>Judge:   The Honorable Cynthia Bashant<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

## INTRODUCTION

By this motion, the Pauma Band of Luiseno Mission Indians of the Pauma & Yuima Reservation ("Pauma" or "Tribe") requests that this Court grant the Tribe leave of court to file a Second Amended Complaint in this action. In accordance with Civil Local Rule 15.1(b), Pauma has attached the proposed Second Amended Complaint as Exhibit A to the accompanying Declaration of Cheryl A. Williams, a redline of the pleading that shows the revisions to the First Amended Complaint as Exhibit B, and the five new exhibits numbered 28 through 32 that will accompany the amended complaint as Exhibits C through G, respectively. Should this Court grant Pauma leave to file the Second Amended Complaint, counsel for Pauma will refile the clean version of the Second Amended Complaint and the thirty-two supporting exhibits as one stand-alone docket entry for ease of reference for both the Court and the parties.

As for the basis for seeking this amendment, much of the argument within the motions to dismiss filed by the State and the Union concern the questions of whether the Union can be a defendant in this action and whether it did or could waive its right to arbitrate unfair labor practice charges before the National Labor Relations Board ("NLRB" or "Board") by negotiating and agreeing to the Tribal Labor Relations Ordinance ("TLRO") within the 1999 Compact. As it turns out, counsel for Pauma discovered in the last few weeks that the Union participated in a federal lawsuit in the aftermath of the execution of the 1999 Compacts in which it tried to defend the TLRO from the attacks of objecting tribes who filed "bad faith" negotiation suits rather than execute a form version of the agreement. *See Picayune Rancheria, et al. v. Wilson, et al.,* No. 97-04693 (N.D. Cal. 2003) ("*Coyote Valley*"). Not only did the Union seek to intervene so it could defend the action in concert with the State of California ("State"), but it also admitted during the course of the proceedings that the TLRO was meant to act as a "substitute" for the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. § 151 *et seq.*, irrespective of whether the Act would ever apply to Indian tribes.

As to that, the first brief filed by the Union was an opposition to a motion for sum-

1    Case No.: 16-CV-02660 BAS AGS
PAUMA'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

mary judgment filed by one of the many plaintiff tribes, wherein the Union explained that the TLRO was enforceable and meant to take the place of the NLRA regardless of its applicability:

> The ultimate outcome of the question whether there is NLRB jurisdiction over the Indian casinos will not be known for years, but in the end it really doesn't matter with respect to the Compact, because its provisions are entirely proper and enforceable under the NLRA.

After this, the Union then filed a second brief to oppose the plaintiff tribe's motion for reconsideration of the order denying its motion for summary judgment, in which the Union characterized the effect of the court order and was even more explicit in explaining that the TLRO was supposed to act as a "substitute" for the NLRA:

> First, this court did not hold that the National Labor Relations Act applies to on-reservation tribal enterprises. It held that a tribe's labor relations with its employees in its casino and closely-related enterprises is directly related to gaming operations. It held that consequently, it was not bad faith for the state to negotiate for a TLRO that <u>substitutes</u> for the National Labor Relations Act. Indeed, the State's proposal presupposes the inapplicability of the NLRA.

Counsel for Pauma obviously believes that these statements – which helped persuade a federal district judge to uphold the labor provisions within the TLRO of the 1999 Compact as the fruit of good faith negotiation – will have a profound impact on the case and the arguments raised by both the State and the Union in their pending motions to dismiss. Furthermore, despite the number of other NLRB or federal court proceedings in which the Union and Pauma or one its subsidiaries have participated, the Union has *never* been forthcoming with the fact that it previously (and successfully) argued in federal court that it believed it had waived its right to file unfair labor practice charges with the NLRB in lieu of arbitration, which means that Pauma had to actively seek out this information from the National Archives and Record Administration. Nevertheless, counsel for Pauma has raised these new allegations – almost all of which are within a new Section VI that begins on page 25 of the clean version of the Second Amended Complaint – as soon

as possible after obtaining the Union's filings and discovering the pertinent statements. Not to mention, the alacrity with which counsel for Pauma acted in putting these materials together and bringing this information to the Court's attention ensures that any delay in the proceedings resulting from the amendment will be negligible. Thus, given the lack of any prejudice to either the State or the Union from these new and relevant allegations, the Court should adhere to the text of the Federal Rules of Civil Procedure and "freely give" Pauma leave to file the Second Amended Complaint.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) ("Rule 15(a)(2)") governs amendments to a pleading other than the first one that may be done as a "matter of course" within 21 days of service of the pleading or the responsive filing. For these "other" amendments, a party may amend its pleading by obtaining leave of court, which "the district court should freely give… when justice so requires." *Silva v. Di Vittorio,* 658 F.3d 1090, 1105 (9th Cir. 2011) (citing Fed. R. Civ. P. 15(a)(2)). The "freely given" language within Rule 15(a)(2) has led the United States Court of Appeals for the Ninth Circuit to conclude that the rule should be interpreted and applied with "extreme liberality." *See, e.g., Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003); *see In re Korean Airlines Co.,* 642 F.3d 685, 701 (9th Cir. 2011) (indicating that Rule 15(a)'s "mandate is to be heeded," and that "[i]n the absence of any apparent or declared reason … the leave sought should, as the rule requires, be 'freely given.'" (quoting *Forman v. Davis,* 371 U.S. 178, 182 (1962))). This language also means that the non-movant bears the burden of demonstrating why leave to amend should not be granted. *See Horton v. Calvary Portfolio Servs., LLC,* 301 F.R.D. 547, 549 (S.D. Cal. 2014).

When making the decision on whether to grant or deny leave to amend, a district judge will typically consider four factors: bad faith, undue delay, prejudice to the opposing party, and the futility of the amendment. *Kaplan v. Rose,* 49 F.3d 1363, 1370 (9th Cir. 1994). The factors are not weighted equally, and by far the single most important factor in the analysis is whether prejudice would result to the non-movant as a consequence of

the amendment. *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.,* 668 F.2d 1014, 1053 (9th Cir. 1981). "Absent prejudice, or a strong showing of any of the remaining factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *C.F. v. Capistrano Unified Sch. Dist.,* 654 F.3d 975, 985 (9th Cir. 2011) (quoting *Eminence Capital,* 316 F.3d at 1051). So long as it adheres to the aforementioned rules, the district court may use its sound discretion to determine whether to grant a motion for leave to amend a pleading. With that said, the soundness of this discretion turns on not only the four factors mentioned above, but also the strong federal policy favoring the disposition of cases on the merits. *See DCD Programs Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987).

## ARGUMENT

**I.   THE NEW ALLEGATIONS IN THE PROPOSED SECOND AMENDED COM-PLAINT CONCERN STATEMENTS THE UNION MADE IN FEDERAL COURT TO UPHOLD THE VALIDITY OF THE TLRO SHORTLY AFTER THE EXECUTION OF THE 1999 COMPACTS, AND DIRECTLY ADDRESS SOME OF THE PRINCIPAL ARGUMENTS RAISED IN THE PENDING MOTIONS TO DISMISS**

The relevance of the evidence behind the new allegations cannot be overstated, and the Court can gauge as much by simply looking at the argument in the Union's memorandum in support of its motion to either dismiss or strike the First Amended Complaint. [Dkt. No. 14-1] Therein, the Union claims that "[t]he First Amended Complaint's length is deceptive, as the legal theory and the fact allegations to support that theory are very simple." [Dkt. No. 14-1, 1:2-3] After a couple pages of discussion, the Union sets forth this simple legal theory by arguing that Pauma is making two contentions: (1) "that the Union is a party to the TLRO," and (2) that "the Union waived its rights to file NLRB charges." [Dkt. No. 14-1, 2:17-19] Though these are supposedly the two main issues in the case, the Union then explains that it simply going to "accept as true the allegations that the Union is a party to the Compact's TLRO" for the purposes of the motion to dismiss and devote its attention instead to attacking the second legal theory of whether or not the Union waived its right to proceed before the NLRB. [Dkt. No. 14-1,

3:10-11] From there, the Union raises a number of waiver arguments, including that any such waiver in the TLRO failed to meet the standard required by the Supreme Court of the United States and that the Union could not "waive a right that it did not know it had." [Dkt. No. 14-1, 13:12-13 & 16:3-4]

However, the meaning and effect of the waiver language in the "binding" and "exclusive" arbitration process of the TLRO gains quite a bit of elucidation from the statements the Union made to a federal district judge in the immediate aftermath of the execution of the 1999 Compacts. As touched upon in the introduction, a number of tribes who participated in the 1999 Compact negotiations elected to forego signing the agreement in favor of filing bad faith negotiations lawsuits within the district in which their reservations were located. *See* 25 U.S.C. § 2710(d)(7)(A)(i) (explaining that a tribe can file suit alleging the State failed to negotiate in good faith for a tribal/State gaming compact). Upwards of eight tribes filed such suits in the United States District Court for the Northern District of California and the court related the cases and consolidated them into one overarching action known as *In re Indian Gaming Related Cases. See Picayune Rancheria, et al. v. Wilson, et al.,* No. 97-04693, Dkt. No. 49 (N.D. Cal. July 30, 1998) (relating instant case with twelve others from the district that were numerically designated as 98-1801, 98-1806, 98-1972, 98-1973, 98-1975, 98-1977, 98-1978, 98-1979, 98-1980, 98-1981, 98-1982, 98-2454).

Initially, the lawsuit was structured so the plaintiff tribes were suing the State and its responsible officials for bad faith negotiation under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2710(d)(7)(A)(i). Yet, when one of the plaintiff tribes named the Coyote Valley Band of Pomo Indians amended and supplemented its initial complaint in the wake of the 1999 Compact negotiations to allege that the State negotiated the agreement in bad faith by demanding revenue sharing and the labor terms of the TLRO, the Union quickly filed an *ex parte* motion to intervene in order to protect the terms of the TLRO and ensure that the suit did not have a negative "impact on HERE organizing activities among Indian casino workers." *See* Decl. of Cheryl A. Williams, Exs. C, D at ¶

3. To that end, the Union included along with its *ex parte* motion a proposed answer in intervention to go along with that filed by the State and an opposition to the motion for summary judgment that Coyote Valley had filed shortly after its amended complaint. *See* Decl. of Cheryl A. Williams, Exs. E, F.

The opposition brief filed by the Union addressed the argument raised by Coyote Valley in its summary judgement motion that the State's demand for the labor protections of the TLRO constituted bad faith negotiation *per se* because such provisions were not a permissible subject of negotiation under Section 2710(d)(3)(C) of IGRA *and* federal labor laws were not even supposed to apply to tribes given the longstanding understandding of the NLRA. *See Fort Apache Timber Co.,* 226 N.L.R.B. 503 (1976). In response to this, the Union put forward an argument that tried to create uncertainty about the applicability of the NLRA to Indian tribes, but then explained that this issue really had no bearing on the TLRO. *See* Decl. of Cheryl A. Williams, Ex. F at pp. 14-15. As to that, in an argument subsection entitled "The Compact Provisions Would Not Be Preempted if the NLRA Were Held to Apply to Indian Casinos," the Union put forward its position that the TLRO was just the sort of agreement that the NLRB and the Supreme Court routinely enforce, and that it would be enforceable to the same extent even if the NLRB overturned decades of precedent at some future unspecified point and held that the NLRA applies to Indian tribes:

> The ultimate outcome of the question whether there is NLRB jurisdiction over the Indian casinos will not be known for years, but in the end it really doesn't matter with respect to the Compact, because its provisions are entirely proper and enforceable under the NLRA.

*See* Decl. of Cheryl A. Williams, Ex. F at pp. 14-15.

Coyote Valley then doubled down on its argument contending that the NLRA did not apply to Indian tribes after the district court denied its summary judgment motion, citing to a then-recent opinion from the United States Court of Appeals for the Tenth Circuit that held that the NLRA does not apply to the on-reservation commercial dealings

of an Indian tribe. *See NLRB v. Pueblo of San Juan,* 280 F.3d 1278 (10th Cir. Sept. 26, 2000), *aff'd en banc,* 276 F.3d 1186 (2002). In response to this, the Union again tried to draw attention to its argument that the applicability of the NLRA was a red herring by arguing that the TLRO was meant to "substitute" for the statute whether or not it applies:

> First, this court did not hold that the National Labor Relations Act applies to on-reservation tribal enterprises. It held that a tribe's labor relations with its employees in its casino and closely-related enterprises is directly related to gaming operations. It held that consequently, it was not bad faith for the state to negotiate for a TLRO that <u>substitutes</u> for the National Labor Relations Act. Indeed, the State's proposal presupposes the inapplicability of the NLRA.

*See* Decl. of Cheryl A. Williams, Ex. G at p. 5.

Using this argument, the Union helped persuade both the district court and later the Ninth Circuit that the TLRO was a permissible subject of negotiation under IGRA so all the parties involved – the State, the signatory tribes, and the Union – were not left with a situation where sixty-plus different sets of tribal laws governed labor relations at tribal casinos in California. *See In re Indian Gaming,* 147 F. Supp. 2d 1011 (N.D. Cal. 2001), *aff'd,* 331 F.3d 1094 (9th Cir. 2003). What this evidence shows, though, is that the Union's position about the impact of the TLRO has radically changed over the years – going from the TLRO is the sole and absolute mechanism for resolving unfair labor practice charges to, what the Union now argues in its motion to dismiss, that it could not have intelligibly waived its right to file charges before the NLRB. Yet, this antecedent evidence undermines this latest argument, has a direct bearing on the issue of the parties' understanding of the waiver in the TLRO at or around the time the 1999 Compact was executed, and should comprise an integral part of the allegations that the Court reviews when ruling on the sufficiency of Pauma's controlling complaint.

The above discussion shows that the proposed amendment would not be futile, and the remaining three analytical factors are easily satisfied. Despite being involved in one Ninth Circuit suit and four or more NLRB suits with Pauma, the Union has never once

turned over these filings from the *In re Indian Gaming* litigation showing that it believed the TLRO was supposed to supplant the NLRA. Counsel for Pauma simply found these documents by stroke of luck while conducting a comprehensive PACER search, and contacted opposing counsel to set-up a meet and confer immediately after locating the pertinent information discussed herein. *See* Decl. of Cheryl A. Williams, ¶¶ 2-3. Thus, neither bad faith nor delay is present, and the only prejudice to the opposing parties results from the damaging nature of the evidence. While this is obviously not a valid reason for denying an amendment, it does appear to be the reason the parties were not able to agree to a stipulation that would have allowed Pauma to file the second amended complaint without court involvement. As to that, the recent tenor of this suit – which is markedly dissimilar from that in the other suit between Pauma and the State before this Court – has become one where the meet and confer process has become a weapon to stave-off filings for as long as possible rather than as a means to achieve compromise. *See* Decl. of Cheryl A. Williams, ¶ 6.

## CONCLUSION

For the foregoing reasons, Pauma respectfully requests that the Court grant Pauma leave to file the Second Amended Complaint and all of its accompanying exhibits.

RESPECTFULLY SUBMITTED this 27th day of January, 2017.

PAUMA BAND OF MISSION INDIANS

By: */s/ Kevin M. Cochrane*
Cheryl A. Williams
Kevin M. Cochrane
caw@williamscochrane.com
kmc@williamscochrane.com
WILLIAMS & COCHRANE, LLP
28581 Old Town Front Street
Temecula, CA 92590
Telephone: (619) 793-4809